# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

### No. 11-13645-EE
_____

## UNITED STATES OF AMERICA,

### Appellee,

### vs.

## DOMINIQUE JUST FIELDS,

### Appellant.

_____

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
_____

### INITIAL BRIEF OF APPELLANT
_____

**Donna Lee Elm**
**Federal Defender**

**Craig L. Crawford**
**Assistant Federal Defender**
**Appellate Division**

**Robert Godfrey**
**Research and Writing Attorney**
**Florida Bar Number 0162795**
**201 South Orange Ave., Suite 300**
**Orlando, Florida  32801**
**Telephone: 407-648-6338**
**Facsimile: 407-648-6095**
**E-Mail: robert_godfrey@fd.org**
**Counsel for Appellant**

**Appeal No. 11-13645-EE**

*United States of America* **v.** *Dominique Just Fields*

**CERTIFICATE OF INTERESTED PERSONS:**

The persons listed below are interested in the outcome of this case:

A.S., victim

A.E., victim

Baker, The Honorable David A.

Boggs, Jr., E. Jackson

Cakmis, Rosemary

C.C., victim

C.E., victim

Counts, Clarence W.

C.S., victim

C.S., victim

Cici's Pizza, victim

Denny's (DENN), victim

Dietrich, The Honorable Donald P.

D.P., victim

D.T., victim

**Appeal No. 11-13645-EE**

***United States of America* v. *Dominique Just Fields***

**CERTIFICATE OF INTERESTED PERSONS-*Cont'd***

E. P, victim

El Padrino Mexican Restaurant, victim

Elm, Donna Lee

Fields, Dominique Just

Godfrey, Robert

I.R., victim

J.C., victim

J.D., victim

J .K., victim

J.R., victim

J.R., victim

J.S., victim

J.S.,victim

Kelly, The Honorable Gregory J.

Langs, Stephen J.

L.A., victim

**Appeal No. 11-13645-EE**

*United States of America v. Dominique Just Fields*

**CERTIFICATE OF INTERESTED PERSONS-*Cont'd***

M.A., victim

M.C., victim

M.D., victim

M.S., victim

M.S., victim

McDonald's (McD), victim

O'Neill, Robert E.

R.V., victim

Rhodes, David P.

Ronca, Peggy Morris

S.L, victim

Sharp, The Honorable G. Kendall

W.P., victim

7-Eleven, victim

## STATEMENT REGARDING ORAL ARGUMENT

Counsel files this brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), and is filing a motion to withdraw herewith.  Counsel therefore does not request oral argument and takes no position with respect to whether oral argument is appropriate in this case.

# TABLE OF CONTENTS

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1 of 3

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Course of Proceedings and Disposition in the Court Below. . . . . . . 2

      B.    Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       i.    Background and motion to dismiss indictment. . . . . . . . . . . . . . . . . 2

      ii.    The evidence at trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            a.    El Padrino Mexican Restaurant. . . . . . . . . . . . . . . . . . . . . . . 5

            b.    McDonald's Restaurant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            c.    7-Eleven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            d.    Denny's Restaurant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            e.    Other evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      iii.    The verdict form and sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.    Standards of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Summary of the Arguments.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Arguments and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    I.    Did the district court err in denying the motion to dismiss the

        entirety of the indictment?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    II.    Did the verdict form's failure to reference 18 U.S.C. § 924(c)

        on counts 2, 4, 6, and 10 constitute plain, uninvited error?. . . . . . . . 23

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF CITATIONS

**Cases**                                                                 **Page**

*Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967). . . . . . . . . . . . . . . . i, 18

*Bazemore v. United States*, 138 F.3d 947 (11th Cir. 1998). . . . . . . . . . . . . . . . 13

*Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002). . . . . . . . . 25

*Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346 (1988). . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bennett*, 472 F.3d 825 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . 25

*United States v. Blackwell*, 767 F.2d 1486 (11th Cir. 1985). . . . . . . . . . . . . . . . . 18

*United States v. Brooks*, 670 F.2d 148 (11th Cir. 1982). . . . . . . . . . . . . . . . . . . . 21

*United States v. Derose*, 74 F.3d 1177 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . 21

*United States v. Dorman*, 488 F.3d 936 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . 25

*United States v. Gaskin*, 364 F.3d 438 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Gholston*, 932 F.2d 904 (11th Cir. 1991). . . . . . . . . . . . . . . . . . 18

*United States v. Gordon*, 290 F.3d 539 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . 13

*United States v. Jones*, 32 F.3d 1512 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mitchell*, 146 F.3d 1338 (11th Cir. 1998). . . . . . . . . . . . . . . . . . 25

*United States v. O'Neal*, 362 F.3d 1310 (11th Cir. 2004). . . . . . . . . . . . . . . . . . 26

*United States v. Riccio*, 529 F.3d 40 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Ross*, 131 F.3d 970 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . 25

iv

*United States v. Stanbeck*,

    2011 WL 6089976 (11th Cir. Dec. 7, 2011) (unpublished). . . . . . . . . . . . . 18

*United States v. Stone*, 139 F.3d 822 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Williams*, 314 F.3d 552 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . 18

*United States v. Williams*, 334 F.3d 1228 (11th Cir. 2003). . . . . . . . . . . . . . . . . 13

**Statutes and Other Authorities**

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 1951(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

18 U.S.C. § 1951(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

18 U.S.C. § 3161(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

18 U.S.C. § 3162(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

USSG § 2B3.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 3D1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 3D1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 3D1.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

34 Geo. L. J. Ann. Rev. Crim. P. 351 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## STATEMENT OF JURISDICTION

This is a direct appeal in a criminal case. The corrected final judgment of the United States District Court, Middle District of Florida, Orlando Division, was entered on August 4, 2011. Doc. 59. The district court had original jurisdiction pursuant to 18 U.S.C. § 3231. Notice of appeal was timely filed on August 8, 2011. Doc. 60. The government filed a notice of cross-appeal on September 6, 2011. Doc. 64. Jurisdiction now lies with this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

**1.** Did the district court err in denying the motion to dismiss the entirety of the indictment?

**2.** Did the verdict form's failure to reference 18 U.S.C. § 924(c) on counts 2, 4, 6, and 10 constitute plain, uninvited error?

# STATEMENT OF THE CASE

**A.    Course of Proceedings and Disposition in the Court Below**

An indictment charged Mr. Fields with five counts of aiding and abetting the obstructing of interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. §§ 1951(a) and (b), and 2 (Counts 1, 3, 5, 7, 9).  For each of the five alleged robberies, the indictment also charged Mr. Fields with five counts of aiding and abetting the possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (C), and 2 (Counts 2, 4, 6, 8, and 10).  Doc. 15.

Mr. Fields moved to dismiss the indictment.  Doc. 22.  The district court dismissed counts 7 and 8.  Docs. 27, 28.  Mr. Fields proceeded to trial on the remaining counts.  The jury returned a verdict of guilty on the eight remaining counts.  Doc. 45.  Mr. Fields was sentenced to a total term of imprisonment of 541 months.  Doc. 59.  He remains incarcerated pursuant to that sentence.

**B.    Statement of the Facts**

**i.    Background and motion to dismiss indictment.**

On May 28, 2010, City of Maitland Police Officer Steve Lorengo made a traffic stop of a suspicious vehicle on the basis that the vehicle's license plate was

2

improperly displayed in the rear window.  Doc. 77 at 163-64.[1]  Three men were in the vehicle, including Mr. Fields, who was in the rear driver's side seat.  Doc. 77 at 164, 177-79.

Officer Lorengo obtained consent from the driver to search the vehicle. Doc. 77 at 165, 181-82.  He found masks, gloves, and two guns, including one directly underneath the seat where Mr. Fields was sitting.  Doc. 77 at 165-72.  All three men were arrested and charged with a state firearms offense.  Doc. 77 at 194-95.

A few weeks later, on June 21, 2010, a criminal complaint was filed against Mr. Fields in the United States District Court for the Middle District of Florida. The complaint charged him with a Hobbs Act robbery of Cici's Pizza on May 15, 2010, and with using or carrying a firearm in relation to that crime of violence. Doc. 1.  The following day, Mr. Fields was arrested by the United States Marshals on the criminal complaint and made his first appearance before a magistrate judge. Doc. 3.

The government and Mr. Fields entered into pre-indictment plea negotiations.  Doc. 22 at 2; Doc. 26 at 2.  During those negotiations, Mr. Fields executed and filed two waivers of speedy indictment.  Docs. 12, 13.  Neither

---

[1] No motion to suppress was filed.

3

waiver, however, was brought to the attention of, or signed, by a judicial officer. Doc. 22 at 1; Doc. 26 at 1-2; Doc. 27 at 1.

Plea negotiations broke down around December 28, 2010. Doc. 22 at 6; Doc. 26 at 2. The government then went before the grand jury, which indicted Mr. Fields on January 26, 2011. Doc. 15. The Cici's Pizza robbery alleged in the criminal complaint became counts 7 and 8 of the indictment, while counts 1-6 and 9-10 alleged four other robberies.

Mr. Fields moved to dismiss the indictment, arguing that dismissal was required by 18 U.S.C. §§ 3161(b) and 3162(a)(1).[2] The government acknowledged that the waivers of speedy indictment were not valid because they had not been signed by a judicial officer, but argued that the proper remedy was to dismiss only counts 7 and 8 as those were the only crimes alleged in the criminal complaint. Doc. 26. The district court agreed with the government and dismissed only counts 7 and 8 (the counts related to the alleged robbery of Cici's Pizza).

---

[2] 18 U.S.C. § 3161(b): "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

18 U.S.C. § 3162(a)(1): "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."

4

Doc. 27.

### ii.   The evidence at trial.

Four robbery charges were tried before the jury, which was selected and sworn without objection.  Doc. 77 at 4-27.  Count 1 alleged a robbery of El Padrino Mexican Restaurant on April 30, 2010; Count 3 alleged a robbery of McDonald's on May 6, 2010; Count 5 alleged a robbery of 7-Eleven on May 13, 2010; and Count 9 alleged a robbery of Denny's on May 19, 2010.  Doc. 15.  Counts 2, 4, 6, and 10 alleged the respective § 924(c) violations.

### a.   El Padrino Mexican Restaurant

In April, 2010, Jesus Duque owned and worked at El Padrino Mexican Restaurant in Kissimmee, Florida.  Doc. 77 at 42.  He and his son, Patrick Duque, testified that they were working in the early morning hours on April 30, 2010, when the restaurant was robbed.  *Id*. at 43-44; 59-61.  Three men walked in carrying guns while wearing masks and gloves.  *Id*. at 44.  One of the men shot into the ceiling and said "This is a robbery. Nobody moves."  *Id*. at 44, 47.  That person took money from the cash register while the other two robbers took money and valuables from the customers and employees.  *Id*. at 47-48.  Approximately $2,000 was taken from the cash register.  *Id*. at 50.  Neither Duque was able to identify any of the robbers.  *Id*. at 57-58, 63.

5

The El Padrino Mexican Restaurant sold beer imported from Holland and from Mexico. Doc. 77 at 50-51. The restaurant had to shut down for the half-hour between the robbery and the regular 2:00 a.m. closing time because of the robbery. No business was conducted during that time. *Id*. at 51-52.

A shell casing from the bullet that was fired was retrieved inside the restaurant and taken into evidence. Doc. 77 at 65-67. It was admitted into evidence at trial without objection. *Id*. at 68.

### b.   McDonald's Restaurant

Damian Perez testified that he was a manager at a McDonald's in Orlando in May, 2010. Doc. 77 at 69. A man came in wearing a mask and pointed a gun in his face. *Id*. at 72-73. That man brought Mr. Perez to the back office and had him open the safe. *Id*. at 73-74. The gunman took about $1,700 from the safe. *Id*. at 74. Another robber, carrying a tire iron, took the money from the cash registers. *Id*. at 79. At some point, the man with the gun hit Mr. Perez in the head with the gun. *Id*. at 77. Mr. Perez testified that he knows for sure there were two robbers, but he did not see a third. *Id*. at 81-82. He was unable to identify any of the robbers. *Id*. at 84.

Various photographs taken by the McDonald's security cameras were admitted into evidence without objection. Doc. 77 at 75-79. Some of the

photographs showed the gloves on the robbers' hands. *Id.* at 83.

The main distributor for the food that the McDonald's sold was headquartered in Georgia. Doc. 77 at 70. Other items, such as the potatoes in the french fries, also came from out of state. Doc. 77 at 71. After the robbery, no products were able to be sold until the police arrived, about fifteen minutes later. *Id.* at 80. The ensuing police investigation caused the restaurant to be closed for about six hours. *Id.* at 87.

### c.  7-Eleven

Mohammed Islam is the assistant manager at a 7-Eleven in St. Cloud, Florida. Doc. 77 at 89. He was working around midnight on May 13, 2010, when he went outside to smoke a cigarette. *Id.* at 90. A black car pulled up and three people, all dressed in black and all carrying handguns, got out. *Id.* at 90-91, 100. The three men and Mr. Islam went inside the store. Mr. Islam said he couldn't open the safe and one of the men hit him behind the ear with a gun. *Id.* at 91-92. The three men left with $374 taken from the cash register. *Id.* at 92-93. Mr. Islam was unable to identify any of the robbers. *Id.* at 107.

Jose Esperenza was also working at the 7-Eleven the night of the robbery. Doc. 77 at 108-09. He testified that three men, dressed completely in black with one carrying a gun and another carrying a flat "tube" used to open things up for a

car, took the money that was in the cash registers.  *Id*. at 109-15.  He, too, was unable to identify any of the robbers.  *Id*. at 118.

The owner of the 7-Eleven testified that the products sold in his store are manufactured outside of Florida and are transported into Florida.  Doc. 77 at 120-22.  When the police arrived after the robbery, the store was closed for about three to four hours so the police could do their investigation.  *Id*. at 93, 124-25.

### d.  Denny's Restaurant

Miguel Andrillon testified that he is the manager at the Denny's in Winter Springs, Florida.  Doc. 77 at 126.  He was working with three other employees around 10:00 p.m. on May 19, 2010, when a man came running in the front door, pointed a gun, and screamed at everyone to get down.  *Id*. at 127-28.  Mr. Andrillon also notice "another gentleman by the cash register," and a third man who also came in.  *Id*. at 128, 136.  The three men were wearing black masks and mostly black clothes.  *Id*. at 128-29, 136.  The robbers took money from the cash register and from the safe, then were planning to put the employees and customers into a freezer.  Mr. Andrillon, though, asked that they be placed in the cooler instead, and the robbers complied.  *Id*. at 129-33.  Mr. Andrillon was unable to identify any of the robbers.  *Id*. at 144.

Renata Vickova testified that she was working as a cook at Denny's when

8

the robbery occurred.  Doc. 77 at 145-47.  She also saw three robbers, but only knows for sure that one of them had a gun.  *Id*. at 150-51, 154.  Ms. Vickova was also unable to identify any of the robbers.  *Id*. at 159-60.

An employee of a food service distributor testified that about 500 out-of-state products are delivered by his company to Denny's.  Doc. 77 at 160-62.

### e.    Other evidence

Officer Lorengo stopped the car in which Mr. Fields was a passenger on May 28, 2010, shortly after midnight.  Doc. 77 at 163-64, 181.  In his subsequent search of that car, Officer Lorengo found a Ruger pistol under the front console, a Star Echeverria semi-automatic pistol under the rear passenger seat where Mr. Fields had been sitting, ski masks, and baseball-style gloves.  *Id*. at 165-72, 188. A later search of the car uncovered a nine-millimeter Colt Luger behind the front dashboard, and a tire iron in the trunk.  *Id*. at 196-98.

A firearms expert, Linzee Willette testified that, in her opinion, the shell casing found at the El Padrino Mexican Restaurant was fired by the Colt discovered in the car.  Doc. 77 at 210, 215-19.  On cross-examination, Ms. Willette testified that every identification made by her is reviewed by another person in her agency.  *Id*. at 222.  The reviewer, though, does not sign off on her report and does not prepare his own report.  *Id*. at 222-23.  In response to a

9

question from defense counsel, Ms. Willette identified the person who reviewed her work as Matthew Conway.  *Id*. at 223.

The following morning, when trial resumed, the government called Matthew Conway as its first witness.  Doc. 73 at 3.  Defense counsel objected to his testimony on the bases of late disclosure of a witness, cumulative witness, and bolstering of Ms. Willette's testimony.  *Id*. at 3-4.  The court overruled the objection, telling counsel "you're the one that brought his name up."  *Id*. at 4.  Mr. Conway then testified that he had verified Ms. Willette's work and concluded that "the submitted cartridge was fired in the submitted pistol."  *Id*. at 7-9.

Detective Jose Ramirez testified that he works for the Orange County Sheriff's Office and is assigned to an ATF task force on robberies.  Doc. 73 at 15. He and another detective interviewed Mr. Fields on the morning of his arrest, after advising him of his rights.  *Id*. at 16-17, 19-20.  The interview lasted about an hour and twenty minutes, ending at 6:45 a.m.  *Id*. at 26-27.  The interview was recorded on a C.D., and a transcript of the interview was prepared.  Detective Ramirez verified the accuracy of the transcript by reading it while listening to the C.D.  *Id*. at 18-19.  Together, they were marked as Composite Government Exhibit 1.  *Id*. at 19.  The transcripts were handed out to the jury and the C.D. was played, with the court first providing an instruction that the tape-recording was the primary

10

evidence and the transcript merely an aid to follow the tape-recording as it was being played. *Id*. at 22-24.

In the recorded interview, Mr. Fields acknowledged that the gun found in the back seat when the car was stopped was his. Ex. 1 at 72. He confirmed that he was in a picture taken at the McDonald's that was robbed. *Id*. at 63-64, 69. Mr. Fields also confirmed that it was him wearing the white gloves seen on one of the robbers at the 7-Eleven. *Id*. at 77-78. At the Denny's, Mr. Fields told the detectives, he told the manager to give him the money and he "put him in the cooler" with the customers because "he asked us to." *Id*. at 42-43.

Detective Alex Rodriguez of the Osceola County Sheriff's Office testified that he went to the jail around 9:00 a.m. the morning that Mr. Fields was arrested after receiving a call that Mr. Fields was willing to speak and willing to show where certain crimes had been committed. Doc. 73 at 37-38, 44-45. He and two other detectives met Mr. Fields at the jail and took him in an unmarked car to various locations in Orange and Osceola Counties. *Id*. at 39. According to Detective Rodriguez's testimony, Mr. Fields was brought to the McDonald's that had been robbed, and "Mr. Fields stated that he committed a robbery at that McDonald's." *Id*. at 41-42. He told the detectives that he jumped over the counter and grabbed the money at McDonald's. *Id*. at 52. Mr. Fields also told the

11

detectives about his participation in the robberies at El Padrino Mexican Restaurant and 7-Eleven. *Id.* at 42-44. At El Padrino, "he said all he did was jump over the counter and take the cash." *Id.* at 55. Mr. Fields told the detectives that he did not have a gun at El Padrino, but he acknowledged that one of the persons he was with had fired a shot into the ceiling. *Id.* at 55-56. At the 7-Eleven, Detective Rodriguez testified, Mr. Fields admitted to grabbing a store employee outside at gunpoint and bringing him back inside the store. *Id.* at 43, 57-58.

The government's last witness, an ATF Special Agent, testified that the three guns found in the car were manufactured out of state. Doc. 73 at 62-66.

Defense counsel made a terse motion for judgment of acquittal, arguing that "at this point the legal sufficiency of the government's case would not be enough to let the case get to the jury. I don't think that we've got enough tie-in all the way around in terms of identification and the remaining elements as to all counts." Doc. 73 at 69. The motion was denied, with the court noting that this was an aiding and abetting case, and that there was both direct and circumstantial evidence. *Id.* at 70.

The jury instructions, taken from the standard pattern instructions, were agreed upon without objection. Doc. 73 at 70-71; *see* Doc. 43.

12

Closing arguments were given without objection.  Doc. 73 at 73-111.
Defense counsel acknowledge that the robberies took place but argued that, other
than his statements post-arrest, there was no evidence connecting Mr. Fields to any
of the robberies.  *Id*. at 91, 98.  He urged the jury to question whether the
statements made by Mr. Fields were really believable.  *Id*. at 92.  He asked the jury
whether it had an "abiding conviction of guilt that Mr. Fields is in fact the one
who did it."  *Id*. at 98.

The government, in its closing, relied largely on aiding and abetting to
argue Mr. Fields' guilt.  Doc. 73 at 74, 106, 108.[3]  The government acknowledged
that no witness had identified Mr. Fields as one of the robbers, but urged the jury
to find that his statements to the police were believable.  *Id*. at 76, 78-82, 104-07,
109-10.

---

[3]  An aiding and abetting theory of liability in § 924(c) cases is well-
established in the case law.  *See, e.g.*, *United States v. Williams*, 334 F.3d 1228,
1232 (11th Cir. 2003) ("To prove aiding and abetting a § 924(c) offense, the
government must show that the substantive offense of carrying or using a firearm
in relation to a crime of violence was committed, that the defendant associated
himself with the criminal venture, and that he committed some act that furthered
the crime."); *Bazemore v. United States*, 138 F.3d 947, 949-50 (11th Cir. 1998);
*United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002) ("a defendant can be
convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing
or controlling a weapon if the defendant's actions were sufficiently 'intertwined
with, and his criminal objectives furthered by' the actions of the participant who
did carry and use the firearm").

### iii.    The verdict form and sentencing

The verdict form was also agreed upon without objection.  Doc. 73 at 71; *see* Doc. 45.  Prior to trial, the defense, but not the government, submitted a proposed verdict form.  *See* Doc. 33.  It appears that the verdict form, including typographical errors, was copied *verbatim* from the defense's proposed verdict form.  *Compare, e.g.*, Instruction within Count 4 in Doc. 33 *with* Instruction within Count 4 in Doc. 45 (both instructions erroneously referencing "question 2(b)" rather than question 4(b)).  Another error, found identically in both the proposed verdict form and the final verdict form, is that the introduction to the § 924(c) counts (counts 2, 4, 6, and 10), does not reference § 924(c) but instead incorrectly states:  "As to the offense of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 1951(a) and (b) . . ."  The jury, though, was given a copy of the redacted indictment for use in its deliberations.  Doc. 73 at 112; *see* Doc. 44.  The redacted indictment, like the original indictment, correctly referenced § 924(c) in the § 924(c) counts.  The standard instructions on § 924(c) and aiding and abetting were also given.  Doc. 73 at 116-17, 119-20; Doc. 43 at 10-11, 14.

The jury asked two questions during deliberations.  One question was whether witnesses were deposed prior to the trial.  Doc. 74 at 4.  That question

was answered, by agreement, with: "The federal criminal rules do not provide for a deposition of witnesses." *Id*. at 4-5. The other question from the jury was why paragraphs 7 and 8 of the verdict form referenced counts 9 and 10. *Id*. at 5. The response, again by agreement, was: "Count Seven and Eight were previously disposed of. See the Indictment." *Id*. at 5-6.

The jury returned a verdict of guilty on all counts, checking off between one and three guns for each of the four robberies. Doc. 74 at 7-10; Doc. 45.

In advance of sentencing, a probation officer prepared a Presentence Investigation Report (PSR). To determine the offense level, the PSR scored the robbery convictions pursuant to USSG § 2B3.1 and the multiple counts provisions of USSG §§ 3D1.1 to 3D1.5. PSR ¶ 66-68.[4] The base offense level for each robbery was 20, pursuant to USSG § 2B3.1. PSR ¶¶ 71, 78, 86, 94.[5] There was a 2-level increase in each robbery for physical restraint, pursuant to USSG § 2B3.1(b)(4). PSR ¶¶ 73, 81, 89, 96.[6] Pursuant to USSG § 2B3.1(b)(3)(a), there

---

[4] The § 924(c) convictions had required statutory minimum sentences and so were not grouped with the Hobbs Act robbery convictions. PSR ¶¶ 69-70.

[5] The robberies were not grouped together as they involved separate victims or harms. PSR ¶ 68. *See* USSG § 3D1.2(d) (specifically excluding from grouping all offenses in § 2B3.1).

[6] *See United States v. Jones*, 32 F.3d 1512, 1518-19 (11th Cir. 1994) (applying 2-level increase pursuant to § 2B3.1(b)(4) where "the credit union

15

were further 2-level increases for the McDonald's and 7-Eleven robberies, based on the employees being hit in the head with a gun. PSR ¶¶ 80, 88. The adjusted offense level for count 1 (El Padrino) and count 9 (Denny's) was thus 22, while the adjusted offense level for count 3 (McDonald's) and count 5 (7-Eleven) was 24. PSR ¶¶ 77, 85, 93, 101. With the highest offense level for one of the robberies being 24, and there being four robberies, the combined adjusted offense level was 28, pursuant to USSG § 3D1.4. PSR ¶¶ 102-109.

The PSR calculated a total of 4 criminal history points for Mr. Fields, resulting in a criminal history category of III. PSR ¶¶ 142-147. The advisory guideline range for the robbery offenses was thus 97-121 months. PSR ¶ 180. That same paragraph noted that the § 924(c) convictions required separate consecutive terms of imprisonment.

Mr. Fields filed a sentencing memorandum. Doc. 48. He objected, without explanation, to the 2-level enhancements for physical restraint and victim injury. *Id*. at 1. He asked for a "fair and just sentence" on the robbery convictions, followed by a consecutive sentence of 10 years on count 2, followed by sentences

---

employees and customers were forced at gunpoint into the safe room and ordered to lie face down on the floor. . . . Although no threats were made, the obvious presence of handguns ensured the victims' compliance and effectively prevented them from leaving the room for a brief period while the robbers fled the scene.").

of 25 years on counts 4, 6, and 10, to run consecutive to count 2 but concurrent with each other. *Id*. at 2-3. The government filed a sentencing memorandum that defended the offense level enhancements, and argued that consecutive sentences were required on the § 924(c) convictions. Doc. 54.

Sentencing was held on July 20, 2011. Defense counsel asked the court to impose a sentence of time served on the robbery convictions, followed by either a 25- or 35-year total sentence on the § 924(c) convictions. Doc. 61 at 3-4. The government sought a sentence at the top of the guideline range, 121 months, for the robberies, followed by consecutive sentences totaling 85 years for the § 924(c) convictions. *Id*. at 9-11. Mr. Fields declined to speak. *Id*. at 11. The court adopted the findings of the PSR and sentenced Mr. Fields to imprisonment for a total term of 541 months. The court imposed concurrent 121-month sentences on counts 1, 3, 5, and 9; followed by a consecutive 10-year sentence on count 2; followed by a consecutive 25-year sentence on count 4, with counts 6 and 10 also being 25-year sentences running concurrent with count 4. *Id*. at 12-16.

A judgment was filed that reflected the sentences imposed but inaccurately listed the title and section of the offenses. Doc. 57. Pursuant to a timely, unopposed motion by the government, the court entered a corrected judgment which accurately listed the title and section of the offenses. Docs. 58, 59.

17

**C.    Standards of Review**

**1.**  Claims under the Speedy Trial Act are reviewed *de novo*.  *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002).

**2.**  The form of a verdict form is a matter of law, so review should be *de novo*.  *See United States v. Stanbeck*, 2011 WL 6089976 at *3 (11th Cir. Dec. 7, 2011) (unpublished) ("We confirm, through *de novo* review that the verdict form accurately reflects the law").

## SUMMARY OF THE ARGUMENTS

A frivolous appeal, according to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), is one without arguable merit.  If, after a "conscientious examination" of the entire record on appeal, counsel concludes that an appeal would be frivolous, then counsel's duty is to prepare a brief that sets out any irregularities in the trial process or other potential error which, in the judgment of the client, another attorney, or the Court, might be arguably meritorious.  *Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 350 (1988); *United States v. Blackwell*, 767 F.2d 1486, 1487-88 (11th Cir. 1985).  Upon the filing of an *Anders* brief, a reviewing court is required to conduct a full examination of the record to decide whether the case is wholly frivolous, and only after that inquiry is complete may it consider the appeal on the merits.  *See United States v. Gholston*, 932 F.2d 904,

18

904 (11th Cir. 1991).

In the instant case, and after diligent review of the entire record on appeal, undersigned counsel has been unable to find any non-frivolous argument that could in good faith be presented on appeal. Consequently, counsel has not presented any argument(s), but rather has merely stated the possible issue(s) that Mr. Fields may be interested in presenting, along with the relevant facts and law.

## ARGUMENTS AND CITATIONS OF AUTHORITY

**I.     Did the district court err in denying the motion to dismiss the entirety of the indictment?**

A criminal complaint was filed against Mr. Fields on June 21, 2010, alleging that he had committed a Hobbs Act robbery of Cici's Pizza on May 15, 2010, and that he had used and carried a firearm during and in relation to that crime of violence. Doc. 1. Mr. Fields was arrested by federal authorities the following day. Doc. 3. When plea negotiations broke down, the government presented a case to the grand jury, which on January 26, 2011, returned an indictment alleging that Mr. Fields had committed the robbery of the Cici's Pizza as well as four other robberies, and that he had, while aiding and abetting others, possessed a firearm in furtherance of those crimes of violence. Doc. 15. A motion to dismiss the indictment for a violation of the Speedy Trial Act was filed. Doc.

19

22.  The court acknowledged a violation of the Speedy Trial Act, but granted the motion as to the Cici's Pizza charges only, leaving intact the remaining eight charges.  Doc. 27.

The Speedy Trial Act provides, in pertinent part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  The remedy for failing to timely file an information or indictment is provided in the next section:  "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, **such charge** against that individual contained **in such complaint** shall be dismissed or otherwise dropped."  18 U.S.C. § 3162(a)(1) (emphasis added).

The district court complied with § 3162(a)(1) when it dismissed the charges of the indictment related to the robbery of Cici's Pizza (counts 7 and 8).  Those two charges were the only charges in the original criminal complaint that were also in the indictment.  The other charges in the indictment were for unrelated robberies.

20

This Court has explained that "[a]n arrest triggers the running of [section] 3161(b) of the Speedy Trial Act only if the arrest is for the same offense for which the accused is subsequently indicted." *United States v. Brooks*, 670 F.2d 148, 151 (11th Cir. 1982). "[T]he general rule [is] that the Speedy Trial Act requires dismissal of only the charge contained in the complaint." *United States v. Derose*, 74 F.3d 1177, 1183 (11th Cir. 1996). The other courts of appeals are in full agreement:

> As this court observed in *United States v. Napolitano*, [761 F.2d 135 (2d Cir. 1985),] the dismissal remedy provided in § 3162(a)(1) – which is not constitutionally mandated – was the product of legislative compromise and, by its terms, has "very limited application." 761 F.2d at 137 (citing legislative history). The statutory language "requires dismissal only of '*such* charge against the individual contained in *such* complaint.'" *Id*. at 137 (quoting 18 U.S.C. § 3162(a)(1)). *Napolitano* instructs that this language must be read strictly. Thus, it applies only to charges "actually pending against an individual." *United States v. Hillegas*, 578 F.2d [453, 457 (2d Cir. 1978)]. If charges are dismissed before expiration of the thirty-day filing period, there is no bar to their being resurrected in a new complaint or indictment. *See* 18 U.S.C. § 3161(d)(1) (resetting speedy trial clock if, after a complaint charge is dismissed against a defendant, the defendant is recharged with the same offense in a new complaint or indictment). Further, where complaint charges remain pending, courts will not dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint, and this applies even if the indictment charges "arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." *United States v. Napolitano*, 761 F.2d at 137. Our sister circuits agree and similarly construe the dismissal sanction of §

21

3162(a)(1) narrowly. *See United States v. Watkins*, 339 F.3d 167, 174 & n. 5 (3d Cir.2003); *United States v. Miller*, 23 F.3d 194, 199 (8th Cir.1994); *United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir.1990); *United States v. Giwa*, 831 F.2d 538, 541 (5th Cir.1987); *United States v. Heldt*, 745 F.2d 1275, 1280 (9th Cir.1984); *United States v. Brooks*, 670 F.2d 148, 151 (11th Cir.1982).

*United States v. Gaskin*, 364 F.3d 438, 451-52 (2d Cir. 2004). The *Gaskin* court thus concluded "we apply §§ 3161(b) and 3162(a)(1) to pre-indictment delay in pursuing only the specific charges alleged in a pending complaint. As to charges not so specified, a defendant's protections against pre-indictment delay are those provided by the applicable statutes of limitations and the speedy trial safeguards of the Due Process Clause." *Id*. at 452.

A law review survey explains:

The thirty-day period [of § 3161(b)] applies only to indictments for offenses charged in the original complaint. *See, e.g.*, *U.S. v. Burgos*, 254 F.3d 8, 15-16 (1st Cir. 2001) (30-day clock only applied to offense charged in original complaint; no violation of Act because new count in superseding indictment charged defendant with a crime other than that for which he was arrested); *U.S. v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001) (30-day clock only applied to offense charged in original complaint; Act not violated by subsequent indictment on related charge after end of 30-day period); *U.S. v. Phipps*, 319 F.3d 177, 182 (5th Cir. 2003) (30-day clock only applied to charge from original complaint and not separate charges added in superseding indictment); *U.S. v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990) (30-day clock applied only to offenses charged in original complaint; dismissal of indictment on 1 count because of 33-day lapse following arrest did not require dismissal of charges not contained in complaint); *U.S. v. Hemmings*, 258 F.3d 587, 591 (7th Cir. 2001) (30-day clock only applied to offense charged in original indictment

and not to superseding indictment adding additional charge); *U.S. v. Grajales-Montoya*, 117 F.3d 356, 366 (8th Cir. 1997) (30-day clock not triggered with respect to drug offense because defendant arrested at scene of crime on INS charges and was only later prosecuted for drug offense); *U.S. v. Gastelum-Almeida*, 298 F.3d 1167, 1173 (9th Cir. 2002) (30-day clock only applied to charges included in the original complaint and not additional charges in superseding indictments).

34 Geo. L. J. Ann. Rev. Crim. P. 351, 358 n.1242 (2005).

In light of the plain language of the statute, this Court's prior holdings, and the holdings of the other courts of appeals, undersigned counsel is unable to argue in good faith that the district court erred when it failed to dismiss the indictment in its entirety.

**II.    Did the verdict form's failure to reference 18 U.S.C. § 924(c) on counts 2, 4, 6, and 10 constitute plain, uninvited error?**

Count 2 is set out on the verdict form as follows:

**Count Two of the Indictment**

As to the offense of possession of a firearm in furtherance of a crime of violence, *in violation of 18 U.S.C. § 1951(a) and (b)*,

We, the jury, find the defendant, **DOMINIQUE JUST FIELDS**:

Guilty _____        Not Guilty _____

Doc. 45 (italicized emphasis added).  Count 4, 6, and 10 are similarly worded.

The verdict form as to counts 2, 4, 6, and 10 thus correctly states the elements of a § 924(c) offense (possession of a firearm in furtherance of a crime of violence),

but erroneously references a "violation of" the Hobbs Act robbery statute, not of §

924(c).

It appears that the error arose from a proposed verdict form submitted by the

defense, which contained the exact same error.  Doc. 33.  The government did not

submit a proposed verdict form.  Moreover, when going over the proposed jury

instructions, the district court noted that the verdict form had been agreed upon.

Doc. 73 at 71.

There were no objections to the form of the verdict form.  There were no

objections to the explanation the district court judge gave to the jury of the verdict

form, even though the verbal explanation repeated the error.  Doc. 73 at 121-25.

The jury instructions correctly explained the elements of the crime of

possession of a firearm in furtherance of a crime of violence, in violation of 18

U.S.C. § 924(c).  Doc. 43 at 10-11.  The jury had a copy of the instructions in the

jury room.  Doc. 73 at 111.  The jury also had a copy of the indictment (with

counts 7 and 8 redacted) in the jury room.  *Id*. at 112.

As an initial matter, it appears that the error in the verdict form may not be

reviewable at all since the error appears to have resulted from a verdict form

proposed by the defense.  This Court has held that "[i]t is a cardinal rule of

appellate review that a party may not challenge as error a ruling or other trial

24

proceeding invited by that party." *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) (citations and quotations omitted). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998). "Where invited error exists, it precludes a court from invoking the plain error rule and reversing." *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002) (citations and quotations omitted).

Even if the error in the verdict form is reviewable, such review would be for plain error only since there was no objection to the verdict form below. *United States v. Mitchell*, 146 F.3d 1338, 1342 (11th Cir. 1998). Reversible error under the plain error standard exists when (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding. *United States v. Dorman*, 488 F.3d 936, 938 (11th Cir. 2007). "A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bennett*, 472 F.3d 825, 831-32 (11th Cir. 2006).

Assuming, *arguendo*, that the verdict form is reviewable and, assuming further, that a plain error exists, then, Mr. Fields would next have to show a

25

reasonable probability of a different result had there been no error.  The error here was clerical in nature, a scrivener's error not a substantive error.  Moreover, the jury was correctly instructed on the substantive elements of the crime, and it had available in the jury room the redacted indictment, which correctly charged the § 924(c) crime in counts 2, 4, 6, and 10.  *See United States v. O'Neal*, 362 F.3d 1310, 1314 (11th Cir. 2004) ("The verdict form must be considered in the context of the jury instructions as a whole."); *United States v. Riccio*, 529 F.3d 40, 47 (1st Cir. 2008) ("we review the [verdict] form as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury").  Counsel is thus unable to make a good faith argument that there is a reasonable probability of a different result had § 924(c) rather than §§ 1951(a) and (b) been referenced in counts 2, 4, 6, and 10.

## CONCLUSION

**WHEREFORE**, pursuant to *Anders v. California*, 386 U.S. 738, 87

S. Ct. 1396 (1967), the undersigned counsel requests this Court's permission to

withdraw as counsel of record and afford Mr. Fields the opportunity, if he so

desires, to supplement this appeal raising any issues that he contends have merit.

Counsel certifies that he has previously forwarded Mr. Fields a copy of all of the

transcripts, the district court docket sheet, the indictment, and the corrected

judgment; and that he is this day forwarding to Mr. Fields a copy of this brief, the

jury instructions, the verdict form, and a letter advising him of his right to

supplement this brief, if he so chooses.

Respectfully submitted,

Donna Lee Elm
Federal Defender

Craig L. Crawford
Assistant Federal Defender
Appellate Division

_____

Robert Godfrey
Research and Writing Attorney
Florida Bar No. 0162795
201 S. Orange Avenue, Suite 300
Orlando, Florida  32801
Telephone: 407-648-6338
E-Mail: robert_godfrey@fd.org
Counsel for Appellant

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant was furnished by United States Mail to Peggy Morris Ronca, Assistant United States Attorney, Appellate Division, 4501 West Church Street, Suite 300, Orlando, Florida 32805, and to Dominique Just Fields, Reg. No. 27702-018, USP Big Sandy, P.O. Box 2068, Inez, KY  41224, on December 22, 2011.

I hereby certify that, in compliance with 11th Cir. R. 31-5, an Adobe Acrobat® PDF file of the brief was uploaded via the Internet to this Court's website on December 22, 2011, at _____ a.m.

_____
Robert Godfrey
Research and Writing Attorney

28